*557 Watts, J.
Respectfully, I concur. I ana in accord with the outcome reached by the majority opinion. I write separately, however, to explain my reasons for agreeing that an impact on a community’s cultural sensitivities may be considered under Howard County Zoning Regulation (“HCZR”) (2012) § 131.-B.2.&.[1]1 agree with the majority opinion’s discussion on cultural sensitivities, see Maj. Op. at 548-54,162 A.3d at 948-52, and its conclusion that
because the community members did not provide a substantial nexus between their “cultural aversion to the death industry” and the enumerated considerations the Board was required to consider in HCZR § 131.B.2.a, the Board did not err in concluding that the Revised Plan would not “create an adverse cultural impact on vicinal properties or that such impact will be above and beyond those ordinarily associated with funeral home and mortuary uses in the RR-DEO zoning district.”
Maj. Op. at 553, 162 A.3d at 951. In other words, I agree with the Majority’s holding, but I write separately to describe, from my perspective, the “substantial nexus” necessary to have an alleged impact on cultural sensitivities considered under HCZR (2012) § 131.B.2.a.
I would hold that, under a plain reading of HCZR (2012) § 131.B.2.a, if the impact of adverse effects such as noise, dust, fumes, odors, lighting, vibrations, hazards or other physical conditions—i.e., the impact of adverse effects of the type identified in HCZR (2012) § 131.B.2.a—bears on a particular community’s cultural sensitivities and the impact of those adverse effects will be greater at the subject site than it generally would be elsewhere due to the community’s cultural *558 sensitivities then the Hearing Authority must consider the community’s cultural sensitivities in determining whether to permit the proposed conditional use. In other words, where, due to a community’s cultural sensitivities, the impact of adverse effects of factors such as noise, fumes, et cetera, is greater at the subject site than it generally would be elsewhere, the Hearing Authority may not discard the impact on the community’s cultural sensitivities in determining whether the proposed use will have an adverse effect on vicinal properties above those ordinarily associated with such uses.
HCZR (2012) § 131.B set forth the general standards required for approval of a conditional use and stated, among other things, the following:
The Hearing Authority shall have the power to permit conditional uses, provided the following general standards are met:
[[Image here]]
2. The proposed use at the proposed location will not have adverse effects on vicinal properties above and beyond those ordinarily associated with such uses. In evaluating the plan under this standard, the Hearing Authority shall consider whether:
a. The impact of adverse effects such as noise, dust, fumes, odors, lighting, vibrations, hazards or other physical conditions will be greater at the subject site than it would generally be elsewhere in the zone or applicable other zones.
The plain language of HCZR (2012) § 131.B.2.a requires the Hearing Authority to consider the impact of adverse effects and whether the adverse effects would be above and beyond those ordinarily associated with the proposed use, ie., a conditional use.
Significantly, the question before the Court is not whether cultural sensitivities is one of the factors or conditions to be considered under HCZR (2012) § 131.B.2.a. Stated otherwise, the question is not whether cultural sensitivities is an identified or proper factor for consideration—ie., an adverse effect *559 in and of itself—akin to noise, dust, fumes, odors, lighting, vibrations, hazards, and other physical conditions. Rather, the question is whether the impact of factors such as noise, dust, fumes, odors, lighting, vibrations, hazards, or other physical conditions will have an adverse effect on vicinal properties above and beyond those ordinarily associated with the proposed conditional use. This includes consideration of whether an adverse impact is greater due to cultural sensitivities where such evidence is presented before the Hearing Authority.
HCZR (2012) § 131.B.2.a does not limit the Hearing Authority to merely concluding or determining whether there will be an adverse effect of a physical type. Indeed, it is evident that HCZR (2012) § 131.B.2.a’s provision that the “impact of adverse effects” be considered is not limited to simply considering whether there is noise or not, or whether there are fumes or not. Instead, consideration of the “impact of adverse effects” must be taken into account. Under a plain reading of HCZR (2012) § 131.B.2.a, if the impact of adverse effects such as noise or fumes—ie., the type of adverse effects identified in HCZR (2012) § 131.B.2.a—bears on a particular community’s cultural sensitivities and the impact will be greater at the subject site due to those sensitivities, then the Hearing Authority must consider the impact on the community’s cultural sensitivities in determining whether to permit the proposed conditional use. Importantly, holding as much would not preclude the Hearing Authority from considering the impact of physical conditions on vicinal properties or otherwise limit or expand what the Hearing Authority may consider as an impact.
In this case, in agreement with the Majority, I would conclude that Petitioners did not present evidence of repercussions to their cultural sensitivities in accord with HCZR (2012) § 131.B.2.a because they failed to tie the alleged affront to their cultural sensitivities to the impact of adverse effects such as noise, dust, fumes, odors, lighting, vibrations, hazards or other physical conditions. Here, as the majority opinion recounts, some members of the community testified generally about the deep-seated cultural aversion to the death industry *560 that certain Asian cultures have and that they generally were opposed to having a funeral home located so close to their residences. See Maj. Op. at 551-53 n.18, 162 A.3d at 950-51 n.18. Those community members, however, failed to provide any indication that untoward noises, dust, fumes, odors, lighting, vibrations, hazards, or other physical conditions would have any consequence at all to their cultural sensitivities, let alone a greater impact at the subject site due to their cultural sensitivities such that the Hearing Authority should have considered as much when determining whether to permit the conditional use. For example, had the community members testified that their cultural sensitivities would be impacted due to the circumstance that they would be able to detect untoward odors emanating from the funeral home, and that the impact at the subject site was greater than it would be elsewhere, then the Hearing Authority would necessarily have needed to consider such an impact under HCZR (2012) § 131.-B.2.a. However, as stated, the community members in this case testified only to a general opposition and dislike to residing near a funeral home.
Accordingly, I agree with the majority opinion’s discussion on cultural sensitivities, see Maj. Op. at 548-54, 162 A.3d at 948-52, and its determination that the community members did not provide a substantial nexus between their “cultural aversion to the death industry” and the enumerated considerations the Board was required to consider in HCZR § 131.-B.2.a. Maj. Op. at 553, 162 A.3d at 951. I write separately to define, from my view, the “substantial nexus” required for an alleged impact on cultural sensitivities to be considered under HCZR (2012) § 131.B,2.a.
For the above reasons, respectfully, I concur.

. As the majority opinion notes, in 2013, the Howard County Council adopted the current version of the HCZR. See Maj. Op. at 530 n.11, 162 A.3d 937 n.11. As a result of revisions, what was HCZR (2012) § 131.-B.2.a is now HCZR § 131.B.3.a, which is substantively identical to the prior version of the regulation. However, because the Board considered the Revised Plan in 2012, I, like the majority opinion, will refer to the HCZR as it existed at that time.